**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| JOSEPH A. HUBER, | Case No. 1:19-cv-224 |
| Plaintiff, | Barrett, J.<br>Bowman, M.J. |
| v. | |
| BRIAN NOLAN, et al., | |
| Defendants. | |

**REPORT AND RECOMMENDATION**

**I.  Procedural Background**

Plaintiff, an incarcerated individual who proceeds *pro se*, tendered a complaint against Defendant Unit Manager Brian Nolan and Institutional Inspector Linnea Mahlman on March 25, 2019, alleging that Defendants have violated his Eighth Amendment rights by housing him under conditions posing a substantial risk of serious harm, because Defendant Nolan allowed a gang member to read an informal complaint resolution that Plaintiff had filed against the inmate and other gang members on or about September 30, 2018.  (Complaint, Doc. 3 at 5).  As a result, Plaintiff alleges that the inmate and/or gang have threatened to kill and "ordered a hit" on him.  (Doc. 3 at 13).

Pursuant to local practice, this case has been referred to the undersigned magistrate judge.  In addition to his complaint, Plaintiff filed a "motion for emergency preliminary injunction." (Doc. 4).  Due to the serious nature of Plaintiff's allegations, in addition to granting Plaintiff leave to proceed *in forma pauperis* and directing service of the complaint against both Defendants, the undersigned ordered the Defendants and/or the Office of the Ohio Attorney General to respond to the motion seeking preliminary injunctive relief. (Doc. 8).  On May 1, 2019, the State of Ohio as an "interested party" filed

a response in opposition to the motion for an emergency preliminary injunction.[1] (Doc. 12).

In addition to his original motion for injunctive relief, Plaintiff has filed a motion seeking to personally appear at a hearing on his motion (Doc. 17), a motion for an "Order to Stop Illegal Confiscations and Tampering with Plaintiff's Legal Materials/Books" that is construed as a second motion for injunctive relief (Doc. 18), two motions seeking the appointment of counsel (Docs. 5, 16), a motion for leave to file supplemental information in support of his original motion for emergency injunctive relief (Doc. 13), and a motion asking this Court to "deny Defendants' request for qualified immunity." (Doc. 20). The State of Ohio has filed responses to all motions filed by Plaintiff, as well as its own motion to strike a request for discovery filed by Plaintiff. (Doc. 26). This Report and Recommendation recommends the denial of three dispositive motions filed by Plaintiff. All non-dispositive motions are addressed by separate Order.

II. **Analysis of Pending Dispositive Motions**

  A. **Motions for "Emergency Preliminary Injunction" and for Temporary Restraining Order or other Preliminary Injunctive Relief (Docs. 4, 18)**

Plaintiff's first motion for preliminary injunctive relief sought this Court's intervention to: (1) "Keep Plaintiff completely away/segregated from all known gang members;" (2) "stop threatening to spray Plaintiff with OC spray out of Retaliation for filing civil suit"; (3)

---
[1] The Ohio Attorney General explained that it was appearing as an "interested party" on behalf of the State of Ohio, in lieu of appearing on behalf of the two Defendants, because as of May 1, 2019, neither of the Defendants had yet been served with the summons or complaint. (Doc. 11). Contrary to counsel's belief, however, it appears that acknowledgments of service were returned by both Defendants on April 25, 2019 and on May 1, 2019. (Docs. 9, 10).

"stop tampering with Plaintiff's personal property and legal documents"; (4) "stop deliberately endangering Plaintiff's life by labeling him a snitch." (Doc. 4 at 4). In addition to enjoining the two identified Defendants, Plaintiff seeks to enjoin multiple non-parties, including all "officers, agents, employees, and all persons acting in concert or participation with" the Defendants. (Doc. 4 at 4-5).

In determining whether to issue a preliminary injunction, the Court must examine four factors: (1) whether the movant has shown a strong likelihood of success on the merits of his complaint; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Overstreet v. Lexington–Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000) (additional citation omitted). These factors are not prerequisites, but are factors that are to be balanced against each other. *Id.* (citations omitted). None of the factors favor the issuance of injunctive relief at this time.

Plaintiff's original 18-page complaint alleges that Defendant Nolan allowed a gang member to read an informal grievance resolution ("ICR") that Plaintiff had filed on September 30, 2018 in which Plaintiff identified six Aryan Brotherhood gang members by name. Plaintiff further alleges that on October 6, 2018, an inmate identified as "Bully" gave Plaintiff a note from one of the previously identified gang members, Brian Turner, in which Turner threatened to kill Plaintiff, stab him, and had "ordered a hit" on Plaintiff. (Doc. 3 at 13). Plaintiff alleges that he provided the note to Defendant Mahlman on October 8, 2018, but that she deliberately destroyed it rather than making a copy as

3

Plaintiff requested. The allegations of Plaintiff's complaint were deemed sufficient at the screening level under the PLRA to state an Eighth Amendment claim against the two Defendants. The claim as stated alleges that both Defendants have failed to protect Plaintiff from injury from other inmates who have threatened Plaintiff, and/or have contributed to that threat by allowing a gang member to read an ICR in which Plaintiff identified specific gang members as extorting or threatening him. Plaintiff further alleges that Defendants failed to comply with prison procedures that would have allowed or required placement of Plaintiff into Protective Custody.[2]

Plaintiff's complaint seeks declaratory and injunctive relief including but not limited to a transfer to protective custody and separations from the six inmates named in his September 30, 2018 ICR. (Doc. 3 at 17). In addition, Plaintiff's complaint seeks declaratory and injunctive relief requiring unidentified "prison officials" to "stop damaging my property [or] violating my rights period," and to "stop retaliating, illegal cell searches and harassing plaintiff." (*Id.*) The complaint also seeks monetary damages "against both defendants in their individual and official capacity[ies]." (*Id.*)

Plaintiff's first motion for an emergency preliminary injunction repeats the central allegation of his complaint that "the Aryan Brotherhood prison gang has threatened to kill the plaintiff and has ordered a hit on the plaintiff because of the prison officials Brian Nolan, and Linnea Mahlman." (Doc. 4 at 5). Other than that allegation, however, there is no reference to the Defendants. Instead, Plaintiff alleges - without providing any dates or

---

[2] Attached to Plaintiff's complaint are 112 pages of exhibits, many of which are duplicates. Some of the exhibits refer to events, persons, and/or dates that appear to be unrelated to the specific Eighth Amendment "failure to protect" claims against the two identified Defendants. (*See generally*, Doc. 3 at 19-130).

other salient details - that unidentified prison officials are "currently retaliating against the plaintiff," and "have damaged Plaintiff's personal property (books)" and have "confiscated evidence/documents" concerning his civil lawsuit against the Defendants. Plaintiff further alleges that the unnamed officials have been denying Plaintiff showers, and preventing Plaintiff from sending mail to his family and friends. He alleges in the same motion that unidentified officials "continue to inst[i]gate/manipulate inmates into continuously harassing me and spraying the plaintiff with blood – human feces and urine, and continuously to flood my cell and threaten to spray me with OC spray for complaining." (Doc. 4 at 6). As stated, the sole claims against the two Defendants fall under the Eighth Amendment, and concern Plaintiff's requests for protective custody and the Defendants' alleged responses to those requests (including Defendant Nolan's alleged disclosure of the ICR to a gang member) in late September and October 2018. Regardless of what conduct Plaintiff may be alleging against unidentified "prison officials" on unspecified dates, there are no allegations in his complaint that either of the named Defendants engaged in any form of retaliation or "harassment" against him.

On May 6, 2019, Plaintiff filed a "Request for an Order to Stop Illegal Confiscations and Tampering with Plaintiff's Legal Material/Books," (Doc. 18), which is appropriately construed as a second motion for preliminary injunctive relief. In this second motion, Plaintiff states that he "plans to file another civil complaint with this Court" because "prison officials are retaliating against the plaintiff by issuing false conduct reports" and "confiscating his legal material and law books." (Doc. 18 at 2). Plaintiff also alleges in his motion that unidentified prison officials have sprayed him with pepper spray and turned off the water in his cell. (*Id.* at 5). None of the two Defendants to this action are

referenced in Plaintiff's construed second motion for preliminary injunctive relief.

Neither the allegations in the complaint nor those contained in Plaintiff's two motions provide a sufficient basis for the award of emergency or temporary injunctive relief. Much of the "emergency" injunctive relief (as well as the permanent injunctive relief requested in Plaintiff's complaint) that Plaintiff seeks is against unidentified non-party "prison officials" who Plaintiff alleges have engaged in various forms of mostly-unspecified retaliatory harassment, but that apparently includes cell searches and unspecified property damage. Although the second motion identifies a list of individuals who have allegedly retaliated against Plaintiff, the list does not include the named Defendants. Other portions of the two motions also do not appear to be sufficiently related to his underlying claims, but instead are more in the nature of general allegations of "harassment" by various individuals and/or non-parties. The Court will not enjoin non-parties, and will not issue injunctive relief that is entirely unrelated to the Plaintiff's underlying claims. *Sidiq v. Champion*, 2006 WL 1275403 at *2 (W.D. Mich., May 8, 2006) (citing *De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945)).

When an injunction is sought by an inmate against state prison officials, the Sixth Circuit has noted that findings of fact in support of any granted relief are "especially critical" since such an order would necessarily intrude "significantly into the prerogatives of state correctional officials." *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438, n. 3 (6th Cir. 1984) ("[W]here state penal institutions are involved, federal courts have a further reason for deference to the appropriate prison authorities")(internal quotation and citation omitted). In addition, an inmate has no constitutionally protected right to a transfer or to be assigned to a particular prison. *Olim*

*v. Wakinekona*, 461 U.S. 238 (1983).

On the preliminary record presented, Plaintiff's allegations and exhibits do not show a strong likelihood of success on the merits of his complaint, and potential interference with the administration of state correctional facilities and interests of the public also disfavor injunctive relief. The undersigned originally directed Defendants to respond to the motion based on the seriousness of the threat of harm to the Plaintiff (a specific death threat from another inmate), despite the relative lack of evidentiary support suggested in the complaint and accompanying exhibits. However, after Plaintiff filed his two motions for injunctive relief, he filed a Notice of a change of address. (Doc. 21). In light of Plaintiff's change of address to a different penal institution, it appears that he no longer can claim an imminent threat of danger from any of the six inmates at SOCF referenced in his complaint.

On May 23, 2019, the State of Ohio filed a Notice that confirms Plaintiff's transfer to the Ohio State Penitentiary and argues that all requests for injunctive relief have been rendered moot. (Doc. 22). The undersigned agrees that Plaintiff's motions for preliminary injunctive relief against the two Defendants (both of whom are SOCF officials) have been rendered moot. However, any other requests for preliminary injunctive relief not directed to the specific Eighth Amendment claims against the named Defendants should be denied on the merits for the reasons stated.

### B. Qualified Immunity

In addition to the two motions in which Plaintiff seeks preliminary injunctive relief, Plaintiff has filed a motion seeking an order denying Defendants Nolan and Mahlman the right to claim qualified immunity "and/or any legal defense(s) for their conduct." (Doc. 20).

To date, neither Defendant has filed an answer or otherwise responded to the complaint, and no discovery has been conducted. Plaintiff's request for an order deciding an ultimate issue in this case is extremely premature, and should be denied.

### III. Conclusion and Recommendations

For the reasons discussed, **IT IS RECOMMENDED THAT:**

1. Plaintiff's Motions for an Emergency Preliminary Injunction or for other Temporary Restraining Order or Preliminary Injunction (Docs. 4, 18) should be **DENIED**;

2. Plaintiff's Motion to Deny Qualified Immunity to the Defendants (Doc. 20) also should be **DENIED**.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOSEPH A. HUBER,

    Plaintiff,

    v.

BRIAN NOLAN, et al.,

    Defendants.

Case No. 1:19-cv-224

Barrett, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).